UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————— X

ROBERT P. LYNCH,

Index No.: 23-cv-8687 (NRM) (LKE)

Plaintiff,

-against-

ROMAN CATHOLIC DIOCESE OF
BROOKLYN, ST. RAPHAEL CATHOLIC
PARISH, and FATHER JAMES I. FROST,

Defendants.

———————————————————————— X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTIONS TO DISMISS

MOSKOWITZ, COLSON
GINSBERG & SCHULMAN, LLP
80 Broad Street, Suite 1900
New York, New York 10004

*Attorneys for Plaintiff*
*Robert P. Lynch*

# **TABLE OF CONTENTS**

Preliminary Statement and Facts ................................................................................................... 1

Argument ........................................................................................................................................ 4

   I.   The Amended Complaint Comports With Rule 8 ................................................................ 4

   II.   Plaintiff Alleges Notice in Sufficient Detail .................................................................... 8

   III.   Plaintiff Adequately Alleges His Negligence-Based Causes of Action ........................... 11

   A.   The Moving Defendants Owed Plaintiff a Duty to Protect Him from Their Employee's Known Dangerous Propensities ..................................................................... 12

   B.   The Moving Defendants Owed Plaintiff a Duty as Landowners ..................................... 15

   C.   The Diocese Owed Plaintiff, a Student in a Diocesan School, a Duty *In Loco Parentis*.. 17

   D.   Moving Defendants Owed Plaintiff a Fiduciary Duty Because of Their Unique Relationship with Him ................................................................................................... 18

   IV.   Plaintiff Adequately Alleges Gross Negligence .............................................................. 19

   V.   Plaintiff's Claims for Infliction of Emotional Distress are Not Time-Barred and are Adequately Pleaded ....................................................................................................... 20

   VI.   Plaintiff's Claim for Breach of Fiduciary Duty is Not Impermissibly Duplicative of His Negligence Claim .......................................................................................................... 22

Conclusion .................................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 9
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 9
*Bernheim v. Litt*, 79 F.3d 318 (2d Cir.1996) ................................................................. 9
*Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187 (S.D.N.Y. 2024) .................. 25
*Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) ................................ 18
*Bumpus v. New York City Transit Auth.*, 851 N.Y.S.2d 591
  (N.Y. App. Div. 2d Dep't 2008) ............................................................................. 18
*C.Q. v. Est. of Rockefeller*, No. 20-CV-2205, 2021 WL 4942802
  (S.D.N.Y. Oct. 21, 2021) ........................................................................ 9, 15, 19, 22
*Caroleo v. The Roman Catholic Diocese of Brooklyn*, No. 519979/2019,
  2021 NY Slip Op. 31445(U), 2021 WL 1667172 (N.Y. Sup. Ct. Apr. 28, 2021) .................... 19
*Costello v. Flatman*, LLC, 558 F.App'x 59 (2d Cir. 2014) .............................................. 20
*Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, No. 20-CV-06208 (EAW),
  2023 WL 1070650 (W.D.N.Y. Jan. 27, 2023) ............................................................... 15
*Di Ponzio v. Riordan*, 89 N.Y.2d 578 (1997) ................................................................. 19
*DiGiorgio v. Roman Catholic Diocese of Brooklyn*, No. 520009/2019,
  2021 WL 1578326 (N.Y. Sup Ct. Apr. 22, 2021) .......................................................... 23
*Dixon v. Reid*, 744 F. Supp. 3d 323 (S.D.N.Y. 2024) ..................................................... 25
*Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) ....................... 14, 15
*Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565
  (N.Y. App. Div. 3d Dep't 2005) ............................................................................. 22
*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ................................................ 16
*Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260 (E.D.N.Y. 2014) ............ 20
*Gargano v. Diocese of Rockville Ctr.*, 888 F. Supp. 1274 (E.D.N.Y. 1995) .......................... 19
*Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826097
  (E.D.N.Y. Mar. 28, 2024) ..................................................................................... 19
*Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826101
  (E.D.N.Y. May 22, 2024) ....................................................................................... 21
*Hammond v. Lincoln Tech. Inst., Inc.*, No. 10-CV-01933, 2012 WL 273067
  (E.D.N.Y. Jan. 30, 2012) ...................................................................................... 21
*Hoose v. Drumm*, 281 N.Y. 54 (1939) ........................................................................ 21
*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993) ............................................................ 25
*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) .......................................... 10
*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791
  (N.Y. App. Div. 2d Dep't 1997) ............................................................................. 18
*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) .............................................. 9
*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ..................................... 9
*LaFrantz v. St. Mary's Roman Cath. Church*, No. 21-CV-4920, 2024 WL 216718
  (E.D.N.Y. Jan. 19, 2024) ....................................................... 12, 19, 20, 23
*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ................................................ 15
*Marasligiller v. City of New York*, 217 F. App'x 55 (2d Cir. 2007) ................................... 19
*Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15 (2008) ........................................ 22
*Mirand v. City of New York*, 84 N.Y.2d 44 (1994) ...................................................... 21, 22
*Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383 (E.D.N.Y. 2021) ......................... 14

*Nash v. Port Washington Union Free Sch. Dist.*, 83 A.D.3d 136
 (N.Y. App. Div. 2d Dep't 2011) ........................................................................... 22

*O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169 (S.D.N.Y. Jan. 23, 2025) ........................ 17

*O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772 (N.Y. App. Div. 3d Dep't 1986)........... 16

*Ortiz v. Parkchester North Condominiums*, No. 16-CV-9646,
 2018 WL 2976011 (S.D.N.Y. June 13, 2018) ................................................................... 14, 15

*Pina v. Henderson*, 752 F.2d 47 (2d Cir. 1985)................................................................... 20

*Polomie v. Golub Corp.*, 640 N.Y.S.2d 700 (N.Y. App. Div. 3d Dep't 1996)............................ 19

*Ranta v. City of New York*, 481 F. Supp. 3d 115 (E.D.N.Y. 2020)............................................. 26

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)..................................................................... 20

*Tabriz v. P.G.K. Luncheonette, Inc.*, 124 A.D.3d 626 (N.Y. App. Div. 2d Dep't 2015) ............ 20

*Vione v. Tewell*, 820 N.Y.S.2d 682 (N.Y. Sup. Ct. 2006) ........................................................ 18

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012).................. 18

**Other Authorities**

Black's Law Dictionary 1289 (12th ed. 2024) ........................................................................ 17

Diocese of Brooklyn, "Parish Directory" ............................................................................ 12, 21

## <u>PRELIMINARY STATEMENT AND FACTS</u>

Plaintiff Robert P. Lynch ("Plaintiff" or "Mr. Lynch") respectfully submits this Memorandum of Law in opposition to the Motions by Defendants Roman Catholic Diocese of Brooklyn (the "Diocese) and St. Raphael Catholic Parish (the "Parish"; collectively with the Diocese, the "Moving Defendants") seeking dismissal of the Amended Complaint ("Am. Compl.").[1]

Father James Frost sexually abused and assaulted Mr. Lynch at least seventy-five times, beginning when Mr. Lynch was approximately sixteen years old and continuing until after he turned eighteen. The abuse that took place before Mr. Lynch turned eighteen is the subject of separate litigation under New York's Child Victims Act. (*See* Am. Compl. ¶ 25.) This case, brought pursuant to the New York Adult Survivors Act, codified at CPLR § 214-J, seeks recovery for Frost's sexual assaults on Mr. Lynch after Mr. Lynch reached the age of majority, and for the Moving Defendants' outrageous and tortious conduct in facilitating those sexual assaults and their tortious conduct after Mr. Lynch gathered the courage to come forward and report the abuse.

The Moving Defendants do not dispute the horrific nature of the abuse Plaintiff suffered. Nor do they dispute the fact that Frost was subsequently removed from the ministry or that the Diocese, after a detailed internal investigation, placed Frost on a list of "Credibly Accused" clergy, reflecting that the Diocese's investigation had substantiated accusations against him.

As alleged in the Amended Complaint, the Diocese had actual notice no later than 1984—approximately ten years before Frost's first assault on Plaintiff—that Frost was a serial

---

[1] Individual defendant Father James I. Frost filed an Answer to the Amended Complaint and has not moved to dismiss.

sexual abuser, when the Diocese removed him from service at St. Mark's Church in Sheepshead Bay, New York because of his conduct toward children in that assignment. (Am. Compl. ¶¶ 51-53.) Several priests were removed from duty at St. Mark's Church in and around 1984 because they engaged in sexual abuse against minors, leading to tumult and upset among parishioners of that church. (Am. Compl. ¶ 52.) Shortly after those priests were removed, a church administrator employed by the Diocese informed other Diocesan officials that Frost also needed to be removed because he was making "worse" the "matters of prudence and delicacy" that arose as a result of the sexual abuse carried out by those other priests. (Am. Compl. ¶ 53.) That coded language was intended to communicate to other Diocesan officials that Frost was a sexual abuser of children, and the recipients of that coded message understood exactly what that message was intended to communicate. (*Id.*) However, instead of defrocking Frost or reporting his criminal conduct to the authorities, the Diocese transferred him elsewhere, thereby enabling him to continue abusing vulnerable young people in the Diocese's charge.

The Diocese's effort to protect Frost by transferring him to another assignment was common practice. As is now widely known, Diocesan policy was to protect abusers by transferring them between and among postings, as it did with Frost when it became aware that he was a sexual predator. (Am. Compl. ¶¶ 57-59.) After a series of other transfers in the wake of additional sexual assaults by Frost against other victims, the Diocese assigned Frost to the Parish, where he began abusing Plaintiff. (*Id.*)

Mr. Lynch's parents both worked for the Parish during his childhood. (Am. Compl. ¶ 38.) Plaintiff attended a school operated by the Parish and the Diocese from first through eighth grade. (*Id.*) He then attended another a high school operated by the Diocese, where he studied to enter the priesthood. (Am. Compl. ¶¶ 38-39.) When Plaintiff was fifteen, his father

died suddenly while working for the Parish.  (*Id.*)  Thereafter, even while attending high school at a Diocesan school, Plaintiff worked for the Parish after school, serving the Parish as an altar boy and as a rectory assistant to Frost.  (Am. Compl. ¶¶ 43-44.)

Frost sexually assaulted Mr. Lynch on Parish premises between 75 and 100 times between approximately 1992 and 1996.  (Am. Compl. ¶¶ 45-48.)

A second priest employed by the Moving Defendants, Father James Cunningham, attempted to rape Plaintiff on Parish grounds in 1996.  (Am. Compl. ¶¶ 62-65.)  In the wake of that attempted rape, which is the subject of the separate, related litigation, Plaintiff finally summoned the courage to report both priests' abuse to a high Diocesan official, whom Mr. Lynch considered a trusted mentor.  The mentor was an auxiliary bishop whom the Diocese employed as principal of Plaintiff's high school.  (Am. Compl. ¶ 67.)

Rather than investigate the abusers and protect Mr. Lynch, the Diocese instead retaliated against him and protected his abusers.  First, Mr. Lynch was summoned to a meeting where he was forced, without the support of any advisor, counselor, or legal representative, to confront and publicly accuse both of his abusers, Frost and Cunningham, while the Moving Defendants' senior representatives defended Mr. Lynch's abusers.  (Am. Compl. ¶¶ 69-71.)  Thereafter, the Moving Defendants failed and refused to take any remedial actions against the sexually abusive priests in their employ or to report those priests' crimes to the authorities.  Instead, the Moving Defendants further retaliated against Plaintiff for having the temerity to come forward by firing his mother, who had remained an employee of the Parish after the death of Mr. Lynch's father, leaving Plaintiff's family destitute.  (Am. Compl. ¶¶ 72-75.)

The Moving Defendants continued to protect Frost even after Plaintiff reported Frost's sexual assaults.  In 1999, shortly after Mr. Lynch reported Frost and Cunningham's sexual

assaults against him, the Diocese transferred Frost from the Parish to Corpus Christi Parish. (Am. Compl. ¶ 61.)  Frost's conduct against other victims is the subject of numerous other lawsuits.  However, nobody—other than Frost himself and perhaps the Diocese—knows how many children and vulnerable young adults Frost was able to sexually assault and abuse because of the Moving Defendants' shocking acquiescence in, and facilitation of, his criminal conduct.

The Moving Defendants assert that all of this is "implausible" under Fed. R. Civ. P. 8— this notwithstanding that Frost was added to the Diocese's own public list of "credibly accused" priests after a thorough internal investigation, files related to which the Diocese has not yet produced.

Mr. Lynch has suffered the consequences of the Moving Defendants' decision to protect Frost at the expense of vulnerable children and young people for decades.  Mr. Lynch deserves a full and fair opportunity to obtain discovery and pursue his day in court.  As set forth herein, Plaintiff's Amended Complaint comports with Rule 8, and he adequately pleads claims for negligence, gross negligence, and negligent and intentional infliction of emotional distress against the Moving Defendants.  The motions to dismiss filed by the Diocese and the Parish accordingly should be denied.

## ARGUMENT

### I.    The Amended Complaint Comports With Rule 8

At Point I of each of their respective briefs, Moving Defendants argue that Plaintiff's claims are "implausible" under *Iqbal* and *Twombly*, and that the Amended Complaint must be dismissed for failure to meet the pleading standard of Rule 8.  Specifically, the Diocese argues that Plaintiff's allegation that the Diocese had actual knowledge of Frost's dangerous propensity to sexually abuse children and vulnerable people is merely a "legal conclusion" based on a "hearsay statement" by a Diocesan employee at St. Mark's Church.  For its part, the Parish

appears to assert that the entirety of the Amended Complaint is implausible for unspecified reasons. That the Moving Defendants lead with this laughable argument is telling and sets the stage for the equally weak arguments that follow.

Under Rule 8, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *C.Q. v. Est. of Rockefeller*, No. 20-CV-2205, 2021 WL 4942802, at *2 (S.D.N.Y. Oct. 21, 2021) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)). A complaint is properly dismissed as "implausible" only where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. 544, 558 (2007). For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "The review of [a 12(b)(6)] motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal citations and quotation marks omitted). To survive dismissal, a complaint "does not need to contain detailed or

elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd*., 751 F.3d 64, 70 (2d Cir. 2014).

The Diocese argument that the Amended Complaint does not plausibly assert notice is without merit.  Plaintiff alleges that the Diocese identified Frost as a sex offender no later than 1984, while he was assigned to St. Mark's Church.  At that time, an administrator at that facility informed his Diocesan superiors that Frost needed to be removed for reasons of "prudence and delicacy."

In the period immediately preceding the administrator's communication, the Diocese removed numerous other priests from that same facility because those priests had committed sexual assaults against children.  The administrator referred to those prior events, in coded language, in explaining why Frost also needed to be removed.  Specifically, as alleged in the Amended Complaint, the administrator informed his superiors at the Diocese that Frost needed to be removed because he was making "matters of prudence and delicacy" that had arisen in connection with those other priests "worse."  As further alleged in the Amended Complaint, the Diocesan officials to whom the communication was sent understood exactly what the message was intended to convey: Frost had committed sex offenses against children and vulnerable people, and he therefore had to be removed from his post.  Rather than take appropriate action to ensure that Frost would not commit similar offenses against other victims in other assignments after removing him from St. Mark's, the Diocese transferred him to the Parish and placed him in a position that enabled him to sexually abuse and assault Mr. Lynch.

The Diocese's argument that it is "implausible" that the administrator's communication to his superiors at the Diocese put the Diocese on notice that Frost was a sex offender fails as well as offends.  The Diocese ignores that the administrator who reported Frost's conduct was

himself a Diocesan official, tasked with overseeing a Diocesan church to which Diocesan priests—including Frost—were assigned by the Diocese to provide religious services.  That official's knowledge can be imputed to the Diocese notwithstanding his use of coded language when communicating in writing with his superiors.  Moreover, it is plausible that a Diocesan official, when reporting to his superiors that a priest had sexually assaulted minors in the custody and care of the church where the Diocese had assigned him, would use coded language that he knew his superiors would understand rather than explicitly recount in writing details of the crimes of which he had gained actual knowledge.  It also is plausible that his superiors would understand exactly what was meant by that coded language—especially, as here, when that priest was merely the latest in a series of sex offenders to commit similar crimes in the same location in a short period of time.

The Diocese's objection to the administrator's communication to his superiors as "inadmissible hearsay" is both erroneous and irrelevant.  At the pleading stage, Plaintiff need not present admissible evidence to support the allegations in his Complaint, and the Diocese cites no authority to the contrary.  In any event, the communication will be admissible at trial as a business record of the Diocese and of St. Mark's Church and as a vicarious admission by the Diocese—and it may also be admissible for other reasons, none of which are appropriately determined at this stage of the proceedings.

The Parish seems to argue that the Amended Complaint, read as a whole, fails plausibly to allege wrongdoing of any sort.  (*See* Parish Mem. at Point I.)  That argument fails.  Plaintiff alleges that he was sexually assaulted, repeatedly, on Parish grounds, by a priest employed by the Parish and known to the Parish to be a sex criminal, and that the Parish retaliated against Plaintiff when he reported the crimes to which the Parish had acquiesced.  Under the standards applicable

7

to a Rule 12 motion to dismiss, those allegations are more than sufficient to assert plausible claims against the Parish and dismissal should be denied. *See LaFrantz v. St. Mary's Roman Cath. Church*, No. 21-CV-4920, 2024 WL 216718, at *3 (E.D.N.Y. Jan. 19, 2024) (finding allegations sufficient under Rule 8 and denying dismissal where complaint alleged that priest was employed by the Diocese and a parish church and was "under [d]efendants' direct supervision, employ, and control when he committed the wrongful acts").

The Parish also had notice of Frost's dangerous proclivities and extensive history of committing sexual assaults at the workplace.  Upon information and belief, the Diocese sent Frost's personnel file—including the communication concerning the "matters of prudence and delicacy" in which he was involved—to the Parish in connection with Frost's transfer to the Parish.  It is also likely that Diocesan officials also communicated with the Parish concerning Frost's performance in previous assignments and the reasons for his transfer.  (Indeed, if the Diocese failed to communicate the risks posed by Frost, that would be a further act of negligence by the Diocese.)  The Amended Complaint, accordingly, raises a reasonable inference that the Parish was at a minimum on inquiry notice and likely had actual notice of Frost's proclivity to engage in sexual violence in the workplace.  At the motion to dismiss stage, where all reasonable inferences must be drawn in Mr. Lynch's favor, that inference is sufficient to warrant denial of the Parish's motion.

## II.      Plaintiff Alleges Notice in Sufficient Detail

The Diocese has the mission to oversee all of the parishes and churches within it, including St. Mark's Church.[2]  The diocesan bishop is responsible for making all assignments of priests and deacons within the Diocese after conferring with the members of an Assignment

---

[2] *See* Diocese of Brooklyn, "Parish Directory,"  (webpage) *available at* https://www.bqcatholic.org/directories/parishes/ (last visited June 3, 2025).

Board maintained by the Diocese. [3]  The Assignment Board is responsible for reviewing requests for transfers, which may be initiated by a priest or by the administrator of a parish within the Diocese—but the requested change of assignment will only be made if the diocesan bishop approves.  When the pastor of a parish desires that a priest assigned to that parish be reassigned, he can request a change by sending a letter to the diocesan bishop's secretary for clergy personnel.  Transfer requests that are submitted in the ordinary course of business are processed twice a year, in June and in January.  A request for reassignment must be submitted by February 15 for a June transfer, and by September 15 for a January transfer.  However, the administrator of a parish may also make an "emergency request" for the transfer of a priest if exigent circumstances arise outside of the scheduled transfer periods.

In and around 1984, several priests were removed from St. Mark's Church because they engaged in sexual abuse against minors, leading to tumult and upset among parishioners of that church.  (Am. Compl. ¶ 52.)  In September 1984, following the removal of those sex-offender priests, the Pastor of St. Mark's Church—himself an employee of the Diocese—sent a letter to the diocesan bishop's secretary for clergy personnel making an emergency request for Frost to be transferred out of his parish.  (Am. Compl. ¶ 53.)  Among other reasons identified by the administrator, the letter stated that Frost's removal was necessary because he was making "worse" the "matters of prudence and delicacy" arising out of the abuse perpetrated by those other priests.  That specific phrasing was an obvious reference to the sexual abuse carried out by

---

[3] The facts concerning Diocesan procedure in this paragraph are not made explicit in the Amended Complaint but are presented here to provide context for the facts alleged in the Amended Complaint.  Should the Court determine that the allegations of the Amended Complaint are not sufficient with regard to notice, Plaintiff respectfully requests leave to amend to include these and additional facts concerning Diocesan policies and procedures, and the relationships among the Diocese, the Parish, and St. Mark's Church.

9

the priests who had recently been removed from service there, and the reference to Frost making those "matters of prudence and delicacy ... worse" was intended to convey to other diocesan officials—including the secretary for clergy personnel, the members of the Assignment Board, and the bishop himself—that Frost, like his predecessor priests who had already been removed, was a sexual abuser of children  (*Id.*)  The recipients of that message understood exactly what the administrator's communication meant and they responded by transferring Frost out of St. Mark's Church.  (*Id.*)

These allegations sufficiently allege that the Diocese had notice of Frost's dangerous propensity, and that Frost had committed sexual assaults against children, no later than September 1984, when a church administrator employed by the Diocese and assigned to St. Mark's Church informed other Diocesan employees, including the Bishop of Brooklyn, of those facts.

The Diocese cites *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 389 (E.D.N.Y. 2021) for the proposition that alleging the "mere fact" that a priest was transferred is not sufficient to allege that the entity causing the transfer knew of the priest's misconduct. *Murray* has no bearing on the sufficiency of Plaintiff's allegations herein, which are not limited to the mere fact of the transfer.  The Amended Complaint lays out the reasons for the transfer and the means by which one Diocesan employee shared his knowledge that Frost was a sexual abuser of children with other Diocesan employees and officials, including the bishop having oversight responsibility over the entire Diocese.

The Diocese's reliance on *Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014), and *Ortiz v. Parkchester North Condominiums*, No. 16-CV-9646, 2018 WL 2976011 (S.D.N.Y. June 13, 2018), is similarly misplaced.  In *Alsaud*, the plaintiff failed to

"allege (i) a single prior act or allegation of sexual misconduct committed by [the employee]; or (ii) a fact suggesting that [the employer] knew or should have known of any such prior acts." *Alsaud*, 12 F.Supp.3d at 680.  Similarly, in *Ortiz*, the plaintiff alleged no facts whatsoever to suggest either that the individual defendants had a violent or criminal history or that their employer knew of that history, instead merely reciting that the employer "knew or should have known that the individual [d]efendants were prone to violence." *Ortiz*, 2018 WL 2976011 at *10. Here, by contrast, Plaintiff alleges with particularity that Frost engaged in sexual assaults against children at St. Mark's Church in 1984, that a Diocesan official having oversight authority over him knew of those assaults, and that the Diocesan official reported Frost's condut to other high-ranking Diocesan officials.  Nothing more is required.

### III.    Plaintiff Adequately Alleges His Negligence-Based Causes of Action

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, No. 20-CV-6208 (EAW), 2023 WL 1070650, at *2 (W.D.N.Y. Jan. 27, 2023) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006)).

Mr. Lynch adequately alleges that the Diocese and Parish owed him duties of care for several reasons: (1) Mr. Lynch and Frost were employees of the Moving Defendants, who therefore owed Mr. Lynch a duty to protect him against Frost's known dangerous proclivities; (2) as landowners, the Moving Defendants owed Plaintiff, an invitee to their premises, a duty to maintain safe premises and prevent foreseeable harm; (3) Mr. Lynch was a student at a school operated by the Diocese, and his activities at the Parish after school hours were in furtherance of his education, giving rise to a duty of care *in loco parentis*; and (4) Mr. Lynch's special relationship of trust with the Moving Defendants gave rise to a fiduciary duty beyond that owed

11

to a typical parishioner.

A. *The Moving Defendants Owed Plaintiff a Duty to Protect Him from Their Employee's Known Dangerous Propensities*

First, Plaintiff alleges that Frost was an employee of both the Diocese (which was responsible for overseeing both Frost and the Parish, and which assigned Frost to work at the Parish) and of the Parish, for which Frost was directly employed. Plaintiff, in his role as an altar boy and assistant to Frost, was also an employee of both the Diocese and the Parish.

In New York, an employer has a duty to prevent its employee from causing harm when "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Here, Plaintiff alleges that the Moving Defendants were aware that Frost had sexually assaulted vulnerable persons in his care while assigned to other churches and parishes within the Diocese. Thus, they owed Plaintiff a duty to protect him from dangers arising out of Frost's known propensity to commit sexual assault.

Defendants' argument that employer liability is barred because sexual assault was outside the scope of Frost's duties as an employee is premised on a faulty understanding of New York law. In New York, when an employee acts outside the scope of his duties, his employer can be held liable if the employer subsequently ratifies or acquiesces in the employee's acts. This is true even when the act in question is a sexual assault. *See, e.g.*, *O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772, 773–74 (N.Y. App. Div. 3d Dep't 1986) (upholding sexual battery claims against employer who "had knowledge of such battery by virtue of [employee's] complaints but refused to take any corrective or remedial action, thereby acquiescing in said battery").

An employer is liable for an employee's misconduct on the basis of acquiescence when the employer knows of the misconduct and fails to take prompt corrective action. *Id.*; *see also*

12

*O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169, at *6 (S.D.N.Y. Jan. 23, 2025) (collecting cases but failing to find acquiescence because employer lacked knowledge of assault); Black's Law Dictionary 1289 (12th ed. 2024) (defining "acquiescence" as, *inter alia*, "tacit or passive acceptance; implied consent to an act"). An employer's knowledge can be established either through direct proof of notice or constructively, as when sexual harassment or assault is pervasive in the workplace. *O'Rear*, 2025 WL 283169, at *6. Where the employer's knowledge is shown, the employer bears the burden of demonstrating that it "took immediate and adequate measures to ensure that the alleged offensive behavior would cease." *Id.* (citations omitted).

Here, Plaintiff alleges that the Moving Defendants knew that Frost had a propensity to commit sexual assaults against children and vulnerable people in the workplace and that he had actually committed such assaults, while in the Diocese's employment, at other locations. Plaintiff further alleges that the Moving Defendants did nothing to stop Frost from continuing to commit sexual crimes during the course of his employment, but that the Moving Defendants instead actively protected Frost from the repercussions of his actions. Rather than take appropriate measures to ensure that Frost's criminal actions against children stop, the Diocese transferred him to new assignments so that Frost could avoid detection and punishment. When Mr. Lynch reported that he had been sexually assaulted, the Parish retaliated against Mr. Lynch rather than punish those who had assaulted him. These allegations are sufficient to make out a claim for vicarious liability on the basis of acquiescence at this stage of the proceedings.

Plaintiff also adequately alleges that the Moving Defendants are liable for their negligent hiring, supervision, and retention of Frost. Under New York law, "[w]here an employer cannot be held vicariously liable for its employee's torts [because they occur outside the scope of his employment], the employer can still be held liable under theories of negligent hiring, negligent

retention, and negligent supervision." *Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 260–61 (S.D.N.Y. 2010) (citing *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791 (N.Y. App. Div. 2d Dep't 1997)).  "A claim for negligent supervision or retention arises when an employer places an employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." *Vione v. Tewell*, 820 N.Y.S.2d 682, 687 (N.Y. Sup. Ct. 2006).  Under New York law, plaintiffs bringing a claim for negligent retention or supervision must also allege that the employer "'knew or should have known' of [the employee's] 'propensity for the conduct which caused [their] injury.'" *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 335 (E.D.N.Y. 2012) (quoting *Bumpus v. New York City Transit Auth.*, 851 N.Y.S.2d 591, 591–92 (N.Y. App. Div. 2d Dep't 2008)).

Here, Plaintiff adequately alleges that the Moving Defendants are liable for their own negligence in hiring, supervising, and retaining Frost, even if vicarious liability is not available. As set forth *supra* at Points I and II, the Amended Complaint's allegations that the Moving Defendants had notice of Frost's dangerous propensity to sexually assault vulnerable people in his charge are plausible and sufficient.  It was reasonably foreseeable that placing Frost in a position where he could assault additional children would result in harm.  Furthermore, had the Moving Defendants not placed Frost in a position where he could cause harm despite knowing of his dangerous propensity, or had they supervised him appropriately, Plaintiff would not have been sexually assaulted and thereby injured.

This Court should reject the Diocese's argument, raised only in passing, that it was not Frost's employer.  The Amended Complaint alleges, and the Diocese cannot reasonably deny, that the Diocese determined the placement and duties of priests within the Diocese, including

14

Frost. "Whether [the Diocese] exercised sufficient supervision and control over [Frost] to qualify as a joint employer is essentially a factual issue" inappropriate for resolution on a motion to dismiss. *Gargano v. Diocese of Rockville Ctr.*, 888 F. Supp. 1274, 1278 (E.D.N.Y. 1995), *aff'd,* 80 F.3d 87 (2d Cir. 1996). *See also*; *LaFrantz* 2024 WL 216718, at *3 (considering the Brooklyn Diocese and a parish church within it to be joint employers of priest for purposes of a motion to dismiss); *Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826097, at *3 n.4 (E.D.N.Y. Mar. 28, 2024) (same).

B. *The Moving Defendants Owed Plaintiff a Duty as Landowners*

"Under New York law, 'landowners and business proprietors have a duty to maintain their properties in reasonably safe condition,'" which "may extend to controlling the conduct of third persons who frequent or use the property." *Marasligiller v. City of New York*, 217 F. App'x 55, 57 (2d Cir. 2007) (quoting *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 582–83 (1997). "[A]n owner of realty has a duty to maintain its property in a safe condition[,] which includes undertaking minimal precautions to protect the public from reasonably foreseeable criminal acts of third persons." *C.Q.*, 2021 WL 4942802, at *6 (alterations in original) (quoting *Polomie v. Golub Corp.*, 640 N.Y.S.2d 700, 701 (N.Y. App. Div. 3d Dep't 1996))). Under New York law, the owners and operators of church facilities can be liable, as landowners, when they expose invitees to a known danger that they might be sexually assaulted by others present by permission. *See, e.g.*, *Caroleo v. The Roman Catholic Diocese of Brooklyn*, No. 519979/2019, 2021 NY Slip Op. 31445(U), 2021 WL 1667172, at *6 (N.Y. Sup. Ct. Apr. 28, 2021) (denying motion to dismiss because defendants "owed a duty of care to plaintiff because, among other things, plaintiff was an invitee on property that defendants owned and/or operated"); *see also LaFrantz*, 2024 WL 216718 *4 (explaining that "Defendants had a duty to Plaintiff by virtue of their status as landowners" where it was reasonably foreseeable that Plaintiff would be on their property).

15

The Moving Defendants breached their duty as landowners by exposing Mr. Lynch—an invitee on their premises—to the known dangers Frost posed, by not supervising Frost, and by allowing Frost's repeated abuse. *LaFrantz*, 2024 WL 216718 *4.

This Court should decline the Diocese's invitation to take judicial notice of documents that purport to show that the Diocese does not own the premises where Plaintiff was assaulted. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion." *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014). "If the court takes judicial notice [of documents], it does so in order 'to determine what statements [they] contained'—but 'again not for the truth of the matters asserted.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted). The statements in the documents must also not be "subject to reasonable dispute." *Costello v. Flatman*, LLC, 558 F.App'x 59, 60 (2d Cir. 2014). And the more important an issue is to the ultimate disposition of a case, the less appropriate judicial notice becomes, because "a court should not go outside the record to supply a fact that is an essential part of a party's case." *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985).

Here, the Court should decline to take judicial notice. The records submitted by the Diocese—even if authentic, which the Diocese has not established—are not conclusive of the issue whether the Diocese owed a duty to those invited onto Parish property. For example, as the Diocese correctly concedes, an out-of-possession landlord that is responsible for security at a given property can be held liable as a landowner. *Tabriz v. P.G.K. Luncheonette, Inc.*, 124 A.D.3d 626, 628 (N.Y. App. Div. 2d Dep't 2015). There are no facts in the Complaint or in the records submitted by the Diocese concerning whether or to what extent the Diocese remains responsible for security on property occupied by the Parish. Indeed, the Diocese's website

16

acknowledges that the Diocese "has the mission to oversee its 185 parishes," including the Parish.[4]  Thus, even if the Court were to take judicial notice, and even if those records established beyond cavil that the Diocese is not a landowner (which they do not), the records the Diocese submits in support of its motion would not be dispositive of the issue whether the Diocese owed Plaintiff a duty of care.  The Court therefore should decline to take judicial notice. *See Guerriero v. Diocese of Brooklyn*, No. 21-CV-4923 (MKB), 2024 WL 2826101, at *3 (E.D.N.Y. May 22, 2024) (denying request to take judicial notice of a parish's certificate of incorporation, the deed for the parish property, and a copy of a map from the New York City Automated City Register Information System showing ownership information for parish property on a motion to dismiss).

### C.  The Diocese Owed Plaintiff, a Student in a Diocesan School, a Duty <u>In Loco Parentis</u>

Schools and similar institutions in New York have a duty of care akin to that of a parent. "In New York, schools are under a special duty of *in loco parentis*." *Hammond v. Lincoln Tech. Inst., Inc.*, No. 10-CV-01933, 2012 WL 273067, at *6 (E.D.N.Y. Jan. 30, 2012).  The duty obligates entities operating schools to "exercise such care of [their charges] as a parent of ordinary prudence would observe in comparable circumstances." *Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994) (quoting *Hoose v. Drumm*, 281 N.Y. 54, 57-58 (1939)).

Here, Plaintiff was a student at a Diocesan school—Cathedral Prep High School, where he was studying to become a priest—throughout the period in which Frost abused him.  After school hours, Plaintiff worked at another location controlled and operated by the Diocese—i.e., the Parish—as an assistant to Frost and as an altar boy.  A reasonable jury could conclude that Plaintiff's work at the Parish was in furtherance of the educational program in religious studies

---

[4]*See* Diocese of Brooklyn, "Parish Directory," (webpage) *available at* https://www.bqcatholic.org/directories/parishes/ (last visited June 3, 2025).

17

provided to Plaintiff by the Diocese at Cathedral Prep, and that the Diocese therefore owed him a duty *in loco parentis* during those activities. *Cf. Nash v. Port Washington Union Free Sch. Dist.*, 83 A.D.3d 136, 149 (N.Y. App. Div. 2d Dep't 2011) (holding that school owed duty *in loco parentis* to student who volunteered to clean a school laboratory after school hours).  For that reason, it is appropriate to engage in discovery to determine the full nature and extent of the relationship between and among the Diocese, Parish and Mr. Lynch. *See C.Q.*, 2021 WL 4942802, at *6 n.5.

The Diocese's argument that no duty *in loco parentis* was owed due to Plaintiff's age is without merit.  New York courts regularly find that those operating high schools owe a duty *in loco parentis* to the high school students who attend their institutions. *See*, *e.g.*, *See Mirand*, 84 N.Y.2d 44 (high school owed students a duty *in loco parentis*); *Nash v. Port Wash. Union Free Sch. Dist.,* 922 N.Y.S.2d 408 (N.Y. App. Div. 2d Dep't 2011) (same).

### D.  Moving Defendants Owed Plaintiff a Fiduciary Duty Because of Their Unique Relationship with Him

Under New York law, a church or religious entity owes a fiduciary duty to a parishioner when that individual's relationship with the church extends beyond that of a typical parishioner. *Doe v. Holy See (State of Vatican City)*, 793 N.Y.S.2d 565, 568 (N.Y. App. Div. 3d Dep't 2005). For example, a fiduciary duty arises when the relationship is such that the church exercises "*de facto* control and dominance" and the plaintiff is "vulnerable and incapable of self-protection." *Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22 (2008).  Whether such a fiduciary duty exists "is a fact-specific question to be determined by the fact-finder, such that breach of fiduciary duty claims should not generally be dismissed before the parties have the opportunity to conduct discovery." *DiGiorgio v. Roman Catholic Diocese of Brooklyn*, No. 520009/2019, 2021 WL 1578326, at *7 (N.Y. Sup Ct. Apr. 22, 2021).

18

Plaintiff adequately alleges a unique relationship with the Moving Defendants sufficient to support a jury finding that a fiduciary duty existed. Both of Plaintiff's parents worked for the Parish, and Plaintiff attended elementary school there before attending high school at a Diocesan high school with the goal of becoming a priest like those whom he had known at the Parish as a child. When Plaintiff's father died unexpectedly, a Bishop working for the Diocese—who was a close friend of Plaintiff's family, and whom Plaintiff viewed as a mentor—arranged for Plaintiff to continue attending school tuition-free, even while Plaintiff's mother remained employed by the Parish. Under these circumstances, a reasonable jury could find that Plaintiff was uniquely vulnerable to the predations of a sex offender operating within the Church, with the Moving Defendants' tacit approval, and that Plaintiff was within the Moving Defendants' *de facto* control.

### IV.    <u>Plaintiff Adequately Alleges Gross Negligence</u>

The Moving Defendants argue that Plaintiff's cause of action for gross negligence must be dismissed for the same reasons that his negligence causes of action must be dismissed. That argument fails for the same reasons as Moving Defendants' arguments concerning the negligence causes of action fail. They also argue that the Amended Complaint fails to allege intentional or reckless conduct.

To make out a claim for gross negligence, a plaintiff must allege conduct "of an 'aggravated character' that 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'" *LaFrantz*, 2024 WL 216718, at *5. Here, Plaintiff alleges that the Diocese, having actual notice that Frost had repeatedly sexually assaulted other minors and vulnerable people whom the Diocese entrusted to him as a spiritual leader, nevertheless protected Frost by transferring him to other assignments with full knowledge that he was likely to continue abusing vulnerable people. By maintaining Frost's status as a priest notwithstanding their

19

knowledge of his extensive history of criminal sexual assaults against vulnerable parishioners in his care, the Moving Defendants knowingly or recklessly created a risk—indeed a probability—that Frost would continue to abuse devout children and young adults like Plaintiff, who had been raised to respect priests, to view them as God's messengers on Earth, and to trust them not only with their physical safety but also with the wellbeing of their eternal souls.  Plaintiff was irreparably harmed by Frost's abuse, and the Moving Defendants knew that such a result was likely when they intentionally exposed him to a known sexual predator.  These allegations are sufficient to support a cause of action for gross negligence.

### V.      Plaintiff's Claims for Infliction of Emotional Distress are Not Time-Barred and are Adequately Pleaded

The Moving Defendants assert that Plaintiff's claim for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) are based solely on the meeting at which Plaintiff was compelled to confront his abusers, outside the presence of anyone who might offer him counsel or support, and at which senior representatives of the Moving Defendants defended the abusers and derided Plaintiff.  They argue that Plaintiff's IIED and NIED claims are time-barred because no criminal sexual activity took place at that meeting.

Plaintiff concedes that his IIED and NIED causes of action would be time-barred if they were based solely on the forced confrontation.  However, those causes of action are not based on the forced confrontation alone.  The allegations supporting them incorporate by reference the entirety of Plaintiff's factual allegations, including the allegations concerning the sexual assaults he suffered because of the Moving Defendants' intentional, reckless, and negligent acts.  (*See* Am. Compl. ¶¶ 155, 164.)  Plaintiff's IIED and NIED causes of action are timely because they arise out of, and include, the sexual assaults he suffered. *Dixon v. Reid*, 744 F. Supp. 3d 323, 328 (S.D.N.Y. 2024).  Dismissal therefore is not warranted.

20

The Moving Defendants further argue that Plaintiff fails to allege "extreme and outrageous conduct" as is required to make out a claim for IIED. That argument also fails.

To plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege "four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). "The conduct alleged must be 'so outrageous in character, so extreme in degree, as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187, 217 (S.D.N.Y. 2024).

Plaintiff adequately alleges all of these elements. Protecting a pedophile and continuing to entrust vulnerable people to his care and unsupervised custody, while knowing that he has previously assaulted children and young adults under similar circumstances and thus is likely to do so again, goes beyond all reasonable bounds of decency. When the Moving Defendants chose to engage in that extreme, outrageous, and utterly intolerable conduct, they knew that doing so was likely to cause severe emotional distress to Frost's future victims, potentially including Plaintiff, but chose to do so anyway. Their conduct caused Plaintiff severe emotional distress, which he continues to suffer to this day.

Plaintiff also adequately alleges his claim for negligent infliction of emotional distress. New York recognizes three distinct forms of that tort. As applicable here, "[u]nder the 'direct duty' theory [of NIED liability] a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Ranta v. City of New York*, 481 F. Supp. 3d

21

115, 118 (E.D.N.Y. 2020).  As set forth in detail above, the Moving Defendants breached duties of care owed to Plaintiff.  Plaintiff's physical safety was unreasonably endangered as a result, causing Plaintiff emotional distress.

### VI.    Plaintiff's Claim for Breach of Fiduciary Duty is Not Impermissibly Duplicative of His Negligence Claim

Finally, the Parish argues that Count IX of the Complaint, alleging breach of fiduciary duty, must be dismissed as duplicative of Plaintiff's cause of action for negligence.

Dismissal of the breach of fiduciary duty claim is not warranted.  While Plaintiff cannot obtain duplicative awards of damages on his negligence and breach of fiduciary duty claims, the federal rules permit pleading in the alternative.  Accordingly, Plaintiff should be permitted to proceed on two different theories of liability arising from the same operative facts.

### CONCLUSION

For all of the reasons and based upon all of the authorities cited herein, the motions to dismiss filed by the Diocese and the Parish should be denied in their entirety.  In the alternative, should the Court determine that Plaintiff has failed adequately to allege any of his causes of action, Plaintiff respectfully requests leave to replead.

Dated:  New York, NY
        June 4, 2025

                                        Moskowitz Colson
                                        Ginsberg & Schulman, LLP

                                        By: _____
                                            Eylan Schulman
                                            Peter R. Ginsberg
                                            Christopher Neff

                                        Attorneys for Plaintiff

22

WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1, I certify that the foregoing Memorandum of Law

contains 7,170 words, excluding the caption, table of contents, table of authorities, and signature

block.  This certification was prepared in reliance on the word-count function of Microsoft

Word, the word processing software with which the document was prepared.

Dated:  New York, NY
        June 4, 2025

                                                Moskowitz Colson
                                                Ginsberg & Schulman, LLP


                                        By: _____
                                                Eylan Schulman
                                                Peter R. Ginsberg
                                                Christopher Neff

                                                Attorneys for Plaintiff

23